# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.

**EMILE HOLLANT,**
     **Plaintiff,**

**vs.**

**CITY OF NORTH MIAMI, LARRY M. SPRING, JR.;**
**LARRY JURIGA; SCOTT GALVIN; and DIANA ROMAN,**
     **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Emile Hollant ("Hollant" or "Plaintiff") bring this Complaint against Defendants the City of North Miami ("City" or "North Miami" or "Defendant"), Larry M. Spring, Jr., Larry Juriga, Jr., Scott Galvin, and Diana Roman, and alleges as follows:

## INTRODUCTION

Emile Hollant ("Hollant") is a Haitian-American citizen who realized his dream of serving and protecting the public when he became a sworn police officer in the City of North Miami, Florida ("City"). He was one of the first Haitian-American police officers in a City that had been dominated by white officers with a sad history of discriminating against Haitians and other ethnic and racial minorities. Although the City and its government evolved into the modern era, these embedded stains of racism continued, as more fully described in this Complaint.

Hollant rose up the ranks to become a Police Commander with an outstanding and unblemished record as a law enforcement officer. After a police-caused tragedy occurred on July 18, 2016, wherein a citizen was shot by a City police officer, the City of North Miami, its senior administrators, and its elected officials engaged in an unconstitutional and outrageous pattern of due process violations, humiliation, lies, deceit, racism, and slander, all of which arbitrarily destroyed the beneficial enjoyment of life, professional career, and reputation of Police

Commander Emile Hollant, who engaged in no impropriety, told the truth at all times about what he observed on that July 18, 2016, and refused to participate in a false narrative of the events. This lawsuit seeks to vindicate his rights as protected by the United States Constitution, the Florida Constitution, and the laws of the United States and the State of Florida.

## NATURE OF ACTION AND JURISDICTION

1.     This is an action for damages pursuant to 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and the Florida Constitution, against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States and the State of Florida.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights.

3.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)1 and 28 U.S.C. § 1391(b)2, as all events giving rise to this cause of action occurred in this judicial district and Defendant City is located in this venue.

4.     Plaintiff has retained the undersigned lawyer to represent his interests in prosecuting this action, and said law firms are entitled to their reasonable attorneys' fees and costs incurred in connection with same.

5.     All conditions precedent to the bringing of this action have been met, waived, or would be futile.

## PARTIES

6.     Plaintiff Emile Hollant ("Hollant" or "Commander Hollant") is *sui juris* and a citizen and resident of North Miami, Miami-Dade County, Florida, within the jurisdiction of the Southern District of Florida.

7.     Defendant the City of North Miami is a municipal corporation within Miami-Dade County, Florida, and operating a police department, and is a person within the meaning of 42 U.S.C. § 1983. The City assumes the risk incidental to the maintenance of a police force and the employment of law enforcement and police officers.

8.     The City is a public entity pursuant to 42 U.S.C. §§ 12131, and subject to the provisions of Title II of the American with Disabilities Act.

9.     Larry M. Spring, Jr. ("Spring") is the City Manager for the City of North Miami, Florida.

10.     Laurence R. Juriga, Jr. ("Juriga") is the Interim Police Chief for the City of North Miami, Florida.

11.     Scott Galvin ("Galvin") is a Councilman for the City of North Miami, Florida.

12.     Dianna Roman ("Roman") is an Internal Affairs Sergeant with the City of North Miami Police Department, North Miami, Florida.

13.     The City is a recipient of federal financial assistance and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794.

14.     At all times material to this Complaint, the individuals associated with the City, as described fully herein, were employees and public officials of the City and/or were acting as the City's agent and representatives, acting under color of state law.

15.     As a result of the incidents described in the Complaint, Commander Hollant

experienced severe pain and suffering, including mental anguish, mental, and emotional suffering, embarrassment, shame, humiliation, damage to his professional standing, damage to his reputation, and other damages including but not limited to damages arising from the violations of his constitutional and property rights.

## FACTS

16.     Hollant, a Haitian national born a United States citizen, arrived in the United States in 1981 from Haiti, always believing that with hard work he could provide a life for his family and earn a positive reputation in the community.

17.     For approximately twenty (20) years, Commander Hollant has served the public as a Police Officer. Commander Hollant invested his entire life, including his blood, sweat and tears, to his public service as a law enforcement officer.

18.     Commander Hollant began employment with the City of North Miami Police Department, North Miami, Florida on November 27, 1999.

19.     As a result of his many accomplishments during his well-decorated law enforcement career, he was appointed to Police Commander, North Miami Police Department.

20.     Hollant has an unblemished record as a Police Officer.

21.     On July 18, 2016, at approximately 5.00 p.m., the City of North Miami Police Department responded to a Miami-Dade 911 call that a man was in the area of 14th Avenue and N.E. 127th Street with what appeared to be a gun to his head and that another gentleman was trying to talk him out of "it."

22.     Commander Hollant positioned himself approximately 170 feet away from where the two subjects, Soto and Kinsey were located.

23.     Commander Hollant moved from his cover position approximately 170 feet away,

4

so he could retrieve his binoculars from his police vehicle to identify the object in Soto's hand, announcing his intention.

24.     Before Hollant could return to visualize the object in Soto's hands through his binoculars, North Miami Police Officer Aledda fired three shots.

25.     Commander Holland then radioed "400, shots fired", over the police-issued radio.

26.     Commander Hollant did not shoot, took no action against anyone, cooperated fully, and provided truthful information in all subsequent inquiries and investigations.

27.     On July 22, 2016, Hollant was falsely accused by the City and Spring of providing misleading statements to investigators. The City and Spring suspended him without pay.

28.     On July 22, 2016, North Miami Councilman Scott Galvin, at a press conference, falsely accused Commander Hollant of "betraying the badge" and "jeopardizing the lives" of his fellow officers. The press conference was broadcast worldwide and is published on the CNN link: http://www.cnn.com/videos/us/2016/07/22/charles-kinsey-north-miami-shooting-presser-bts.wplg.

29.     Around June 2017, Galvin posted and published on his personal website that "**Earlier today, the City of North Miami announced they are terminating the employment of Commander Emile Hollant who was present at last summer's shooting of unarmed caretaker Charles Kinsey."** And also "He Lied to Me, the Commander Completely Lied to Me". www.scottgalvin.com.

30.     Commander Hollant was placed on Administrative Leave without pay by the City and Spring.

31.     Commander Hollant was falsely accused by the City and Spring, among others, of fabricating information about the shooting, lying about his whereabouts when the shots were fired,

and that he was not present at the time of shooting.

32.     Commander Hollant accurately informed investigators he was present at the immediate scene before the shooting and after, and his involvement is captured to some degree in police radio transmissions.

33.     In a July 22, 2016 memo RE: Request to Initiate Internal Affairs #16-06, Sgt. Diana Roman stated "She arrived at the scene at approximately 5:25 p.m. and made contact with Commander Hollant. He advised her that he had been present on the scene before and after the shooting, but did not witness the actual shooting when he went to his car to get his binoculars." Because Sgt. Roman had already "made contact with Commander Hollant" she knew very well that Hollant never claimed he was not a witness at the scene. Commander Hollant did, however, insist he was not an eyewitness to the shooting.

34.     Sgt. Roman continued her investigation as if she had no first-hand knowledge of Hollant's whereabouts. She continued her investigation by asking witnesses if they saw Commander Hollant at the scene or if he announced himself as a witness.

35.     A North Miami Police Department Internal Affairs investigation ordinarily lasts no longer than 180 days according to Florida Statute §112.532(6)(a)(2), which states, "The running of the limitations period is tolled during the time that any criminal investigation or prosecution is pending in connection with the act, omission, or other allegation of misconduct."

36.     Sgt. Roman stated in her Investigative Summary that "the investigation was tolled at the request of FDLE…pending the completion of their investigation of Officer Aledda's police-involved shooting." She also stated that it was "tolled pending review by the State Attorney's Office (SAO)."

37.     The FDLE investigated the shooting of the unarmed black man by North Miami

Police Department Officer Aledda. Commander Hollant was not the subject of the FDLE investigation of the shooting. As such, the Internal Affairs investigation of Hollant was completely separate from the FDLE investigation of the shooting, which was completed on December 21, 2016.

38.     On August 2, 2016, Commander Hollant voluntarily gave a sworn statement to the Miami-Dade State Attorney's Office regarding the events of the shooting.

39.     Commander Hollant stated he did not witness the shooting because he was retrieving his binoculars from his police vehicle.

40.     Subsequently, the Miami Dade State Attorney's Office released an official Close-Out Memo stating "Commander Hollant did not lie, and that there was no evidence of intent by Commander Hollant to mislead or obstruct investigators or command staff officers regarding his involvement in the police shooting and that any discrepancy was the result of a miscommunication". The Close-Out Memo is an official public record.

41.     The State Attorney's Close-out Memo stated that "there is insufficient evidence in this matter to generate a formal criminal investigation".

42.     Commander Hollant was cleared of all wrongdoing by the State Attorney's Office on August 2, 2016.

43.     As such, Commander Hollant's 180-day period for the processing of the Internal Affairs investigation began no later than August 2, 2016, and ended no later than January 29, 2017.

44.     On or about August 22, 2016, Commander Hollant received confirmation of his assignment to administrative leave with pay pending the indefinite completion date of a North Miami Police Department investigation.

45.     On or about December 20, 2016, the Florida Department of Law Enforcement

(FDLE) issued its report on the shooting to the Miami-Dade State Attorney's Office, reaffirming the initial conclusion in the Close-Out Memo that Commander Hollant did nothing wrong.

46.     North Miami Police Department Internal Affairs Case #16-06 was not resolved until May 24, 2017, at least 115 days beyond the allowable deadline of January 29, 2017, in violation of the rights guaranteed to Commander Hollant by the Officers' Bill of Rights.

47.     Internal Affairs Sgt. Diana Roman interviewed Detective Gaudio who told her when he arrived at the scene of the police shooting, he "made contact" with Commander Hollant, who told him he "just arrived."

48.     Det. Gaudio arrived 15 minutes after Sgt. Roman arrived, and according to her own words, Commander Hollant was already on the scene, and had left to get his binoculars when the shooting took place.

49.     Thus, Sgt. Roman knew Det. Gaudio's testimony was false, yet she prepared her investigative summary on May 4, 2017, swearing under penalty of perjury that her report was true and correct.

50.     The *Biscayne Times* published an article in July 2017 entitled, *Were they Railroaded?* The article stated: "Sgt. Diana Roman, who was conducting the Internal Affairs Investigation, and police department consultant Adam Burden, who was steering the IA investigation, visited the SAO on February 27 with additional testimony from Reid and others, seeking to get the office to retract its August 2, 2016, statement that 'Commander Hollant did not lie.'"

51.     The State Attorney's Office refused to amend or retract its Close-Out Memo two times. First via an email on April 5, 2017, from Chief Assistant State Attorney Jose J. Arrojo, and again via an email on April 14, 2017, from Assistant State Attorney Howard Rosen.

52.     Howard Rosen's email explained how Sgt. Roman tried to get him to change the "verbiage" in the Close-Out Memo so it would not state, "We concluded that Commander Hollant did not lie." Mr. Rosen was adamant in his refusal of her request.

53.     Sgt. Roman filed a second IA complaint against Commander Hollant on July 25, 2017, as retaliation for his advising her he was going to give additional testimony to the State Attorney's Office on July 24, 2017, which was subsequently dismissed by Juriga.

54.     Although Commander Hollant was fully exonerated in the State Attorney's Office Close-Out Memo and the FDLE Close-Out Report, the City has not reinstated him to active duty.

55.     On January 14, 2017, Commander Hollant requested a modification to his at-home administrative leave restrictions due to his doctor's recommendation. The City and Spring never sent a response to him.

56.     On June 14, 2017, Acting Chief of Police Larry Juriga sent Commander Hollant a letter *Re: Notice of Intent to Terminate and Right to Pre-Determination Hearing*.

57.     Despite being cleared by the State Attorney's Office and FDLE, Acting Chief Juriga informed Commander Hollant of his intent to terminate Hollant's employment with the City based on the Police Disposition Panel findings.

58.     As of November 15, 2017, Commander Hollant remains on Administrative Leave with pay.

59.     Despite being cleared of any wrongdoing on multiple occasions, Commander Hollant has been on a virtual house arrest for over 16 months.

60.     Commander Hollant's placement on "house arrest" constitutes an adverse action as that term is defined by the United States Supreme Court in that it has the practical effect of ending his law enforcement career and subjects him to humiliation.

61.     The procedures used to recommend Commander Hollant's termination, which recommendation was under consideration by City Manager Spring for six (6) months, were unjustified, unconstitutional, and a deprivation of due process to Commander Hollant.

62.     The "procedures" employed by the City and Spring were part of a policy, practice, and custom of the City of denying procedural due process to police officers.

63.     Commander Hollant's placement on home confinement constituted a violation of substantive due process by taking away his property and liberty interests in his job.

64.     Commander Hollant's treatment by the City was motivated by invidious racism practiced by an old guard in the Police Department, led by Larry Jurigia, Jr., who have not accepted the Haitian-American presence in the City.

65.     Commander Hollant was retaliated against and specifically targeted by Spring, Galvin, and Juriga for exercising his First Amendment Rights.

66.     Specifically, on July 25, 2017, the City targeted Commander Hollant for investigation because he exercised his First Amendment Right to make comments to the media and others concerning his views of the City's false accusations and improper investigation.

67.     Hollant had a clear legal right under the First Amendment to the United States Constitution to express his opinion.

68.     At all times, the City, Spring, Juriga, and Galvin were aware of Commander Hollant's clear legal and federal Constitutional Rights.

69.     Defendants intentionally violated Commander Hollant's clear legal rights under the First Amendment to the United States Constitution by investigating, harassing, and punishing him for exercising these rights.

70.     Commander Hollant participated in multiple investigations of the City of North

Miami's handling of the shooting incident and subsequent events.

71.    This included the City of North Miami Police, the Florida Department of Law Enforcement, and the Miami-Dade State Attorney's Office.

72.    During these investigations, Commander Hollant provided information concerning his belief that the City committed malfeasance by making false statements about the investigations, mishandling the investigation, and not being objective in the manner in which they were handling the investigation.

73.    Commander Hollant provided complaints in writing to the Miami-Dade Commission on Ethics & Public Trust, the Florida Commission on Human Relations, and other agencies regarding his concerns about misfeasance and malfeasance in the City and Spring's handling of the investigation.

74.    Commander Hollant provided a written complaint to the Miami-Dade Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") based on his being discriminated against because he is a Haitian-American who complained about white and Hispanic police officers not being objective in their investigation of an incident involving a black citizen.

75.    Commander Hollant received a Right to Sue letter from the EEOC.

76.    Commander Hollant satisfied all conditions precedent to bringing this Complaint.

77.    At all times material, Defendants Larry Spring, Jr., Larry Juriga, Jr., Scott Galvin, and Dianna Roman acted in bad faith, with a malicious purpose, and in a manner exhibiting wanton and reckless disregard of Plaintiff's human rights, safety, and property.

78.    At all times, the placement of Commander Hollant on administrative leave prevented him from leaving his home, carrying a badge, or representing himself as police officer.

79.     At all times, the continuation of Commander Hollant on administrative leave was adverse action that has impeded and harmed his career.

80.     At all times, Defendants Larry Spring, Jr., Larry Juriga, Jr., Scott Galvin, and Dianna Roman acted to retaliate against Commander Hollant in violation of his civil rights, to humiliate him, and to cause him severe emotional duress.

### COUNT I – 42 U.S.C. §1983 LIBERTY INTEREST VIOLATION
### AGAINST THE CITY OF NORTH MIAMI

Plaintiff reincorporates and re-alleges paragraphs 1-80 as though set forth fully herein and further alleges as follows:

81.     The Fourteenth Amendment prohibits the Defendant City from depriving a person like Commander Hollant of liberty or property without due process of law.

82.     The concept of liberty recognizes two particular interests of a public employee: (a) the protection of his good name, reputation, honor and integrity, and (b) his freedom to take advantage of other employment opportunities.

83.     In connection with the adverse action taken against Commander Hollant's employment, the Defendant City made and disseminated several false statements of fact:

a)      That Commander Hollant obstructed the law enforcement investigation by way of false statements.

b)      That Plaintiff violated the following Standard Operating Procedures and General Rules and Regulations:

1.   General Rules and Regulations, Section 7, Members withholding information or furnishing unauthorized and/or confidential information with a view to personal gain or for any other reason shall be subject to disciplinary action.

2. General Rules and Regulations, Section 22, Members are required to speak the truth at all times and under all circumstances, whether under oath or otherwise, except in cases where they are not allowed by the rules of the service to divulge facts within their knowledge, in which case they remain silent.

3. Standard Operating Procedure, 300.19 V.E., Identify and locate all witnesses and police officers at the scene.  Keep all witnesses, including involved officer(s) and witness officer(s) separated. Prevent any officers or others from interviewing the involved officer(s) prior to the arrival of the Shooting Team.

4. General Rules and Regulations, Section 44, Members of the Police Department shall not make false official reports, or knowingly enter or cause to be entered in any Police Department books or records any inaccurate, or false information.

c) That Plaintiff made inconsistent statements under oath to the Florida Department of Law Enforcement investigator and to the Internal Affairs Investigator.

d) That Commander Hollant was derelict in performing his duties and tasks at the scene of the shooting.

e) That when Commander Hollant left to get his binoculars, he failed to monitor the radio and provide any direction to his subordinate officers.

f) That Commander Hollant may have colluded with a police officer to circumvent the internal affairs investigation.

13

g)      That Commander Hollant did not write a supplementary report.

84.    The aforementioned statements are materially false.

85.    The Defendant City provided Commander Hollant no meaningful opportunity for a name clearing hearing. He was given a Pre-Determination Hearing, but the outcome was already decided.

86.    The false statements of fact identified above have cast a disparaging cloud over Commander Hollant's reputation for honesty and competency.

87.    As a direct and proximate result of the Defendant City's actions as aforesaid, Commander Hollant suffered damages in the form of no loss of job but was confined to his home five (5) days a week from 8 am to 5 pm, benefits, his law enforcement identity, his reputation, emotional distress, a blow to his reputation, and other damages.

For these reasons, Plaintiff Emile Hollant demands the entry of a judgment in his favor and against Defendant City of North Miami, after trial by jury, by determining and declaring that the Defendant City violated Commander Hollant's due process rights, awarding damages, including to his reputation, lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel and internal affairs files, a hearing to have his file cleared, attorneys' fees, costs, and all interest allowed by law.

## COUNT II – 42 U.S.C. §1983 DUE PROCESS VIOLATION
## AGAINST CITY MANAGER LARRY SPRING

Plaintiff Commander Hollant reincorporates and re-alleges paragraphs 1-80 as though set forth full herein and further allege as follows:

88.    Commander Hollant, had a property right in his continued employment with the Defendant City as guaranteed by the United States Constitution.

14

89.     The Fourteenth Amendment to the United States Constitution prohibits City Manager Spring from depriving a person like Commander Hollant of liberty or property without due process of law.

90.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires, *inter alia*, that City Manager Spring provide Commander Hollant with a pre-determination hearing or "…some opportunity for the employee to present his side of the case… before the termination takes effect." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985).

91.     The Due Process Clause requires that City Manager Spring provide Commander Hollant notice of the charges against him, an explanation of the Defendant City's evidence, and provided an opportunity for Commander Hollant to present his side of the story.

92.     City Manager Spring violated Commander Hollant's due process rights when he placed Commander Hollant on paid administrative leave.

93.     City Manager Spring failed in his obligation to give Commander Hollant notice of the reason for his taking adverse action(s) against him – including the removal of his authority and placing him on administrative leave – at or before taking employment action(s) against him.

94.     City Manager Spring employed no rule or ordinance that entitled Commander Hollant to receive notice of any adverse action(s) against him and the reason(s) for such action at or before being subjected to any adverse employment action(s).

95.     City Manager Spring further failed in his obligation to give Commander Hollant an opportunity to be heard prior to its taking adverse action(s) against him.

96.     City Manager Spring enacted/employed no rule or ordinance that entitled Commander Hollant to have a hearing prior to being subjected to any adverse action(s).

97.     City Manager Spring thus deprived Commander Hollant of his property interest – his continued employment – without a constitutionally adequate process.

98.     City Manager Spring knew or reasonably should have known his conduct would lead to the deprivation of Commander Hollant's constitutional rights by the City of North Miami.

99.     As a direct and proximate result of the Defendant City Manager Spring's actions as aforesaid, Commander Hollant suffered damages in the form of the no loss of his job but was placed under house confinement, wages, benefits, reputation, identity, and other damages.

For these reasons, Plaintiff Commander Emile Hollant demands the entry of a judgment in his favor and against Defendant, Larry Spring, after trial by jury, by determining and declaring that the Defendant City Manager Spring violated Commander Hollant's due process rights, reinstating him, awarding him damages, including for damages to his reputation, lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel and internal affairs files, a hearing to have his file cleared, attorney's fees, costs, and all interest allowed by law.

### COUNT III – 42 U.S.C. §1983 LIBERTY INTEREST VIOLATION AGAINST CITY MANAGER LARRY SPRING

Plaintiff reincorporates and re-alleges paragraphs 1-80 as though set forth fully herein and further alleges as follows:

100.    The Fourteenth Amendment prohibits the Defendant City and Defendant Spring from depriving a person like Commander Hollant of liberty or property without due process of law.

101.    The concept of liberty recognizes two particular interests of a public employee: (a) the protection of his good name, reputation, honor and integrity, and (b) his freedom to take advantage of other employment opportunities.

16

102.    Commander Hollant worked hard personally and professionally to earn a stellar reputation during his career in law enforcement public service, which began in 1989.

103.    In connection with Commander Hollant's employment, the Defendant City and Defendant Spring made and disseminated several false statements of fact:

a)      That Commander Hollant made inconsistent statements under oath to the Florida Department of Enforcement investigator and to the Internal Affairs Investigator;

b)      That Commander Hollant lost control over the subordinate officers;

c)      That Commander Hollant may have colluded with a police officer to circumvent the internal affairs investigation.

104.    The aforementioned statements are materially false.

105.    The Defendants City and Spring provided Commander Hollant no meaningful opportunity for a name clearing hearing.

106.    As a direct and proximate result of the Defendant City Manager's action as aforesaid, Commander Hollant suffered damages in the form of the no loss of his job, benefits, identity and other damages.

For these reasons, Plaintiff Commander Emile Hollant demands the entry of a judgment in his favor and against Defendant Larry Spring, trial by jury, by determining and declaring that the Defendant City Manager Spring violated Commander Hollant's due process rights, awarding damages, including to his reputation, lost past and future wages and employment-related benefits attorneys' fees, costs, and all interest allowed by law.

### COUNT IV – 42 U.S.C. §1983 LIBERTY INTEREST VIOLATION
### AGAINST SCOTT W. GALVIN

Plaintiff reincorporates and re-alleges paragraphs 1-80 as though set forth fully herein and further alleges as follows:

107.    The Fourteenth Amendment prohibits Defendant Galvin from depriving a person like Commander Hollant of liberty or property without due process of law.

108.    The concept of liberty recognizes two particular interests of a public employee: (a) the protection of his good name, reputation, honor and integrity, and (b) his freedom to take advantage of other employment opportunities.

109.    Commander Hollant worked hard personally and professionally to earn a stellar reputation during his career in law enforcement public service, which began in 1989.

110.    Defendant Councilman Galvin made and disseminated false statements of fact, to wit: that Commander Hollant made inconsistent statements under oath to the Florida Department of Law Enforcement investigator and to the Internal Affairs Investigator – *i.e*., that he "lied", and that Commander Hollant was "betraying the badge" and "jeopardizing the lives" of his fellow officers.

111.    The aforementioned statements are materially false.

112.    Defendant Galvin made the statements to CBS 4, in his official capacity as well as in his individual capacity, knowing and intending that such statement would cause harm to Commander Hollant's personal and professional reputation with the intent of harming Commander Hollant's reputation and his ability to obtain future employment.

113.    Defendant Galvin's statement to the public about Commander Hollant was knowingly and materially false and/or made with reckless disregard for its truth or falsity, made with the intent to harm Commander Hollant's reputation and his ability to obtain future

employment.

114.    Defendant Galvin's statement was made with the malicious intent to injure Commander Hollant and it did, in fact, injure Commander Hollant's reputation and has and will injure his ability to obtain future employment.

115.    As a direct and proximate result of the Defendant Councilman Galvin's actions as aforesaid, Commander Hollant suffered damages to his reputation for integrity, honesty, professionalism, and competency.

For these reasons, Plaintiff Emile Hollant demands the entry of a judgment in his favor and against Defendant Scott Galvin, after trial by jury, by determining and declaring that Defendant Galvin violated Commander Hollant's liberty interest rights, and awarding damages, including for damages to his reputation, attorneys' fees, costs, and all interest allowed by law.

### COUNT V - VIOLATION OF FLORIDA WHISTEBLOWER STATUTE VIOLATION OF SECTION 112.3187, F.S. AGAINST CITY

Plaintiff hereby incorporates paragraphs 1 through 80 as if fully set forth herein.

116.    The City of North Miami is an agency, a term defined by Section 112.3187 (3)(a), Florida Statutes.

117.    Plaintiff was, at all times material, an employee as that term is defined by Section 112.3187(3)(b), Florida Statutes.

118.    The City of North Miami took adverse personnel action against the Plaintiff, as that term is defined by Section 112.3187(3)(c), Florida Statutes.

119.    The action taken against Plaintiff included suspension and loss of titles, positions, compensation, and benefits within the City.

120.    The actions taken by the City were prohibitive under Section 112.3187(4), Florida Statutes.

121.    The prohibitive actions were taken because the Plaintiff disclosed information, as defined by Section 112.3187(5)(a) and (b), Florida Statutes.

122.    Plaintiff disclosed suspected violations of federal, state, and local law and regulations committed by employees and agents of the City of North Miami.

123.    Plaintiff disclosed acts and suspected acts of gross management, malfeasance, misfeasance, and gross waste of public funds committed by employees and agents of the City of North Miami.

124.    Plaintiff participated in investigations and other inquiries conducted by agencies of the Local, State, and Federal government as defined in Section 112.3187 (7).

125.    Plaintiff disclosed information to the Miami Dade State Attorney's Office, the Florida Department of Law Enforcement, the Miami-Dade Commission on Ethics & Public Trust, and the appropriate local officials as those terms are defined in Section 112.3187(6).

126.    Plaintiff filed written and signed complaints disclosing information enumerated in Section 112.3187 (5) and to parties and entities enumerated in Section 112.3187(6).

127.    Plaintiff refused to participate in adverse actions prohibited by Section 112.3187.

128.    Plaintiff refused to participate in unethical, illegal, and inappropriate violations of Federal, State, and local laws, rules, regulations, and policies, and disclosed to City officials and officers such violations and misrepresentations to City and State officials.

For these reasons, Plaintiff requests immediate reinstatement to his position as Commander, along with reinstatement to his former position, with full pay including back pay and front pay, benefits, compensation, seniority rights, and any lost income and compensatory damages. Plaintiff additionally seeks immediate payment of all attorneys' fees and costs.

20

## COUNT VI - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 EMPLOYMENT DISCRIMINATION IN VIOLATION OF TITLE VII

Plaintiff re-alleges paragraphs 1 through 80 as if fully set forth herein.

129.    Commander Hollant is a Haitian male.

130.    Commander Hollant has been discriminated against by the City of North Miami by being denied an appropriate salary level, fringe benefits, and by being ridiculed, suspended without due process and subjected to a hostile work environment in comparison to non-Haitian officers and employees.

131.    The City intentionally discriminated against Commander Hollant in his compensation and the terms and conditions of his employment because of his National Origin.

132.    As result of this discrimination, Commander Hollant has suffered damages.

For these reasons, Plaintiff Emile Hollant demands judgment for damages against the City of North Miami, Florida, including five million dollars ($5,000,000.00) in compensatory damages, along with punitive damages, attorneys' fees and costs, and other available relief as the Court deems just and proper.

## COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DURESS AGAINST DEFENDANTS SPRING, JURIGA, GALVIN AND ROMAN

Plaintiff hereby incorporates paragraphs 1 through 80 as if fully set forth herein.

133.    Defendants Spring, Juriga, Galvin, and Roman engaged in outrageous conduct.

134.    Their conduct was intended to inflict harm on the Plaintiff.

135.    As a result of the Defendants' outrageous conduct, Plaintiff has suffered both severe emotional and physical duress.

136.    At all times material, the Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and reckless disregard of Plaintiff's civil rights, safety, and

property.

137.     Such conduct by the Defendants were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

138.     As a direct and proximate result of the negligence acts, as alleged herein, the Plaintiff suffered injury, which resulted in pain and suffering, mental anguish, loss of capacity for the enjoyment of life, inconvenience, care, and treatment, loss of earnings, and loss of the ability to earn money in the future. The losses are either permanent or continuing in nature and Plaintiff will suffer said losses in the future.

For these reasons, Plaintiff demands judgment for compensatory damages against Defendants Spring, Juriga, Galvin, and Roman, together with costs incurred herein and all other relief the Court deems just and proper.

### COUNT VIII - SLANDER AGAINST GALVIN

139.     Plaintiff incorporates paragraphs 1through 80 as if fully set forth herein;

140.     Galvin disseminated comments about Commander Hollant that were materially false.

141.     Galvin intentionally disseminated these false statements about Commander Hollant knowing that they were completely false.

142.     Galvin did this with malice intent and with the intent to harm Commander Hollant.

143.     Galvin made these comments outside the scope of his duties as a City Councilman and with no privilege.

For these reasons, Plaintiff Emile Hollant demands damages, compensatory damages, and all other relief seemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable.

## CERTIFICATE OF SERVICE

I certify that on November 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

Respectfully submitted,

**MICHAEL A. PIZZI, JR. P.A.**
Florida Bar No. 79545
6625 Miami Lakes Drive East, Suite 313
Miami Lakes, Florida 33014
Tel: (305) 777-3800
Fax: (305) 777-3802
mpizzi@pizzilaw.com

By:     */s/ Michael A. Pizzi, Jr.*
          **MICHAEL A. PIZZI, JR.**
Florida Bar No. 079545

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
FLORIDA BAR NO. 233293
**MICHAEL T. DAVIS**
FLORIDA BAR NO. 63374
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2 STREET, SUITE 3550
MIAMI, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

23

## SERVICE LIST

**Jeff P.H. Cazeau, City Attorney**
City of North Miami
776 NE 125 Street, 1st Floor
North Miami, FL 33161
jcazeau@northmiamifl.gov
Tel: 305.893.6511 x12201
Tel: (310) 826-4700
Fax: (310) 826-4711

Attorney for Defendants