United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Emile Hollant, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-24197-Civ-Scola |
| | ) |
| City of North Miami, Florida, and others, Defendants. | ) |
| | ) |

**Order on Motion to Dismiss**

This matter is before the Court upon the motion to dismiss filed by the Defendants City of North Miami (the "City"), Larry M. Spring, Jr., Larry Juriga, Scott W. Galvin, and Diana Roman. (Mot., ECF No. 32.) After careful consideration of the motion, opposing and supporting submissions, and the applicable case law, the Court **grants in part and denies in part** the motion (**ECF No. 32**.)

**1. Background**

This case arises in the aftermath of a police-involved shooting in July, 2016. As alleged in the amended complaint (ECF No. 30), the Plaintiff, who was a commander in the North Miami Police Department, was one of the responders to a 9-1-1 call about two individuals later identified as Arnaldo Rios-Soto and Charles Kinsey—one of whom appeared to have a gun to his head. After positioning himself approximately 170 feet away from the two men, Hollant moved from his position to get a set of binoculars from his patrol car to better see and attempt to identify the object in Rios-Soto's hand. Before Hollant returned, North Miami Police officer Aledda fired, hitting Kinsey. Hollant told Gary Eugene, the police chief at the time, who arrived at the scene after the shooting, that he had not witnessed the shooting.

Three days later, Defendant Juriga, the assistant police chief at the time (and now current chief), claimed that Hollant had lied to Eugene and had made a statement that caused Aledda to open fire. Based on this information, Eugene decided to put Hollant on administrative leave, which Defendant Larry Spring, the City manager, stated should be without pay. However, after reviewing the radio transmissions from the shooting incident, Eugene requested that Defendant Spring and the City attorney review the police radio communications before suspending Hollant. According to Hollant, Defendant Spring refused to listen, and ordered Eugene to relieve Hollant of duty. Hollant alleges that even

though Eugene did not agree with the suspension, he nevertheless suspended Hollant without pay as directed, and without prior notice or an opportunity to be heard.

Later the same day at a national press conference, Defendant Spring falsely accused Hollant of fabricating information and lying about his absence when the shooting took place. In addition, Defendant Scott Galvin, a City councilman, falsely accused Hollant at the same press conference of "betraying the badge" and "jeopardizing the lives" of his officers. News of Hollant's suspension was also circulated in the local media.

As a result of the media reports, the Miami-Dade County State Attorney's Office ("SAO") and the Florida Department of Law Enforcement ("FDLE") commenced investigations regarding the shooting incident and Hollant's involvement. The SAO ultimately determined not to pursue a formal criminal investigation, and despite alleged pressure from the City, the SAO refused to amend its close-out memo to change language regarding its conclusion that Hollant did not lie. In addition, Hollant remained on administrative leave, but with pay, pending completion of a North Miami Police Department internal investigation, headed by the Defendant Sergeant Diana Roman.

In December, 2016, FDLE issued its report on the shooting by Officer Aledda, which the Plaintiff alleges reaffirmed the SAO's initial conclusion that he did nothing wrong. However, the Disposition Panel report ultimately found that Hollant obstructed the law enforcement investigation by making false statements. In spite of internal disagreements with the report's finding, Defendant Juriga sent Hollant notice of his intent to terminate Hollant and of Hollant's right to a pre-determination hearing.

Hollant requested and attended a pre-determination hearing, at which he alleges that he was not given the opportunity to cross-examine witnesses or to clear his name. In addition, the City's personnel board refused to review his termination decision. As a result, Hollant maintains that the process was unfair and violated his right to due process.

In the amended complaint, Hollant asserts 42 U.S.C. § 1983 claims for violations of his right to due process under the Fourteenth Amendment (Counts 1-4); a claim for violation of the Florida Whistleblower Act (Count 5); a claim for national origin discrimination (Count 6); a claim for intentional infliction of emotional distress (Count 7); and a claim for slander (Count 8). The Defendants each seek dismissal of the claims asserted against them.

### 2. Legal Standard

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the

complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citation omitted). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

### 3. Analysis

In their motion, the Defendants argue that the amended complaint should be dismissed in its entirety. Specifically, the Defendants maintain that Counts 1 through 4 should be dismissed because the Plaintiff received adequate due process in the form of a pre-determination hearing, and that the claims in Counts 1 and 2 against the City should be dismissed because the Plaintiff fails to adequately allege a municipal custom or practice. In addition, the Defendants argue that the claims in Counts 1, 3, and 4 asserted against the individual Defendants Spring, Juriga, and Galvin should be dismissed because they are redundant of the claims against the City, and if asserted against the Defendants in their individual capacities, the Defendants are entitled to qualified immunity. Finally, the Defendants argue that Counts 5 through 7 fail to state a claim, and the allegedly slanderous statements underlying Count 8 are absolutely privileged. The Court considers each argument in turn.

## A. Due process claims under § 1983 (Counts 1-4)

A civil rights action under § 1983 requires the deprivation of a federally protected right by a person acting under color of state law. 42 U.S.C. § 1983; *Polk Cty. v. Dodson*, 454 U.S. 312 (1981); *Myers v. Bowman*, 713 F.3d 1319, 1329-30 (11th Cir. 2013); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

In the analysis of procedural due process claim, a plaintiff must have a property interest of which he is deprived by state action, and he must have received insufficient process regarding that deprivation. *Ross v. Clayton Cty.*, 173 F.3d 1305, 1307 (11th Cir. 1999) Indeed, "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). "Generally, a public employee has a property interest in continued employment if state or local ordinance in any way limits the power of the appointing body to dismiss an employee." *Id.* (internal quotations omitted).

The Defendants argue that the Plaintiff was afforded sufficient due process because he was provided a pre-determination hearing, which also gave him the opportunity to clear his name. In response, Hollant argues that he did not receive a hearing prior to being suspended, and that the pre-determination hearing he had prior to his termination was not meaningful. In order to determine whether a violation has occurred, the Court must inquire into the process provided. "This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon*, 494 U.S. at 126. Thus, the inquiry is necessarily a factually intensive one, and not suited to disposition upon a motion to dismiss.

The Eleventh Circuit recognizes the existence of a liberty interest in one's good name and reputation, and has held that a procedural due process claim for deprivation of that interest may arise where the state fails to provide an employee with an opportunity for a name clearing hearing when it publishes stigmatizing information in the employee's personnel file. *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (internal citation omitted). "[A] public employer is required to provide the opportunity for a post-termination name-clearing hearing when stigmatizing information is made part of the public records, or otherwise published." *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1046 (11th Cir. 1989). To show that a deprivation of a public employee's liberty interest in his good name has occurred without due process of law, the employee must prove the existence of (1) a false statement (2) of a stigmatizing

nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for the employee to clear his name. *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir.2001).

The Defendants argue that the Plaintiff's allegations are insufficient with respect to the sixth element of his claim only, arguing that the pre-determination hearing was sufficient opportunity to clear his name, and that the timing of hearings is irrelevant. However, Hollant alleges that the pre-determination hearing did not provide him a meaningful opportunity to clear his name because he was not given the opportunity to cross-examine witnesses, and the hearing was not before a neutral body. The cases relied upon by the Defendants, which involved evaluations at summary judgment, indicate that the sufficiency of such a hearing is a factual determination that should not be made at the dismissal stage. *See Wilson v. Farley*, 203 F. App'x 239, 249 (11th Cir. 2006); *Lapham v. Fla. Dept. of Corr.*, No. 07-80964-CIV, 2009 WL 151161, at *3 (S.D. Fla. Jan. 21, 2009) (Hurley, J.); *Dressler v. Jenne*, 87 F. Supp. 2d 1308, 1313 (S.D. Fla. 2000) (Gold, J.). The allegations in the amended complaint are therefore sufficient to state a claim against the City.

### B. Municipal liability claims (Counts 1-2)

The Defendants nevertheless argue for dismissal of Counts 1 and 2 against the City for failure to allege a municipal policy or custom, because a single alleged policy decision by a policymaking authority is insufficient.

Municipalities and other local government entities are subject to liability under § 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

"Although local governments cannot be held liable merely on a theory of respondeat superior, a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy." *Martinez v. City of Opa-Locka, Fla.*, 971 F.2d 708, 713 (11th Cir. 1992) (internal citation omitted). In determining if a single act is sufficient, the Court is guided by the following

principles: "(1) Municipalities have section 1983 liability only for acts officially sanctioned or ordered by the municipality. (2) Only those municipal officials who have 'final policymaking authority' may subject the municipality to section 1983 liability for their actions. (3) The determination of whether or not a particular official has 'final policymaking authority' is governed by state law, including valid local ordinances and regulations. (4) The challenged action must have been taken pursuant to a policy adopted by the official or officials responsible for making policy in that particular area of the city's business, as determined by state law." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990) (quoting *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988) (internal quotations omitted)).

In the instant case, Hollant has alleged that Defendant Spring, as the City manager, has final decision and policy making authority, and that Spring initially ordered that Hollant be relieved of duty, authorized his termination, and determined that the City's personnel board did not have jurisdiction to hear Hollant's appeal of his termination. In addition, Hollant alleges that the City, through Defendants Spring and Galvin, made false and damaging statements about Hollant, his role in the shooting, and his participation in the associated investigations at a press conference broadcast nationally. These allegations are sufficient to withstand dismissal.

### C. § 1983 claims against the individual defendants (Counts 1, 3-4)

The Defendants argue that the claims against Spring, Juriga, and Galvin in Counts 1, 3 and 4 should be dismissed as duplicative of his claims against the City, if asserted against the Defendants in their official capacities. In response, Hollant contends that he is entitled to plead in the alternative.

From the face of the amended complaint, it is not clear whether Hollant's claims are asserted against the individual Defendants in their official or individual capacities. However, it is clear that the claims in Counts 1, 3, and 4 against the individual Defendants are based upon the same wrongful conduct alleged against the City in Counts 1 and 2. A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As a result, any claims against Spring, Juriga, and Galvin in their official capacities are due to be dismissed

with prejudice. *See Perez v. Sch. Bd. of Miami-Dade Cty., Fla.*, 917 F. Supp. 2d 1261, 1266 (S.D. Fla. 2013) (Ungaro, J.) (dismissing claims against defendant officers sued in their official capacities).

The Defendants argue in addition that they are entitled to qualified immunity to the extent that the claims are asserted against Spring, Juriga, and Galvin in their individual capacities. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). The Supreme Court has "'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pace v. Capobianco*, 283 F.3d 1275, 1284 (11th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[T]he defendant is entitled to dismissal [on the basis of qualified immunity] when the plaintiff has failed to *allege* a violation of a clearly established right." *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir. 1990) (internal citation omitted) (emphasis in original). "[I]t is the plaintiff's allegations that determine whether the defendant is entitled to immunity because (as with all motions for judgment on the complaint or pleadings) the factual allegations are taken as true." *Id.* Thus, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotations and citations omitted).

To claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). In this case, the parties do not dispute that the Defendants were acting within their discretionary authority.

Once it is established that a public official was acting in a discretionary capacity, the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 526 (11th Cir. 2010). "This objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Kirkland v. Mosaic Fertilizer, LLC*, No. 8:14-CV-1715, 2015 WL 4042100, at *2 (M.D. Fla. July 1, 2015) (quoting *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir. 1997)).

The Defendants contend that they did not violate Hollant's constitutional rights; however, the Court has already determined that the complaint sufficiently alleges a violation of Hollant's Fourteenth Amendment rights. The Defendants argue that they are nevertheless entitled to qualified immunity

because Hollant has not sufficiently alleged the violation of clearly established law with respect to his liberty interest, in that the Defendants are alleged to have done nothing more than comment on matters of public concern and there is no case holding that a municipal employee who received a pre-determination hearing has a clearly established right to a later name-clearing hearing.

Clearly established law can come from a materially similar case that has already been decided; a broader, clearly established principle; or conduct that so obviously violates the constitution that prior case law is unnecessary. *Mercado*, 407 F.3d at 1158-59 (citations omitted). "More than a general legal proposition—for example, to act reasonably—is usually required; if a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question." *Youmans*, 626 F.3d at 563 (citing *Brousseau v. Haugen*, 125 S. Ct. 596, 599 (2004)). "The unlawfulness of a given act must be made truly obvious, rather than simply implied, by the preexisting law." *Id.*

The Plaintiff relies on *Andreu* to support the notion that a liberty interest in one's reputation is clearly established, and that false and stigmatizing statements made in connection with one's discharge violate an individual's liberty interest. However, in *Andreu*, the disparaging comments made about Andreu stated that his actions were criminal and that he had sought to cover them up, when criminal charges against him had been dismissed months earlier. *Andreu*, 919 F.2d at 638, 644. Here, Hollant alleges that Defendant Spring accused him of providing misleading statements to investigators, fabricating information about the shooting, lying about his whereabouts when shots were fired, and about his presence at the time of the shooting. (*See* Am. Compl., ECF No. 30 at ¶¶ 37-38.) In addition, Hollant alleges that Defendant Galvin accused him of "betraying the badge" and "jeopardizing the lives" of his fellow officers. (*Id.* at ¶ 40.) Significantly, none of these alleged comments involve accusations of criminal conduct such that *Andreu* may be properly viewed as a sufficiently similar case. Indeed, the Court's inquiry examines "whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation the defendant officer confronted.*" *Youmans*, 626 F.3d at 563 (citing *Brousseau*, 125 S. Ct. at 199) (internal quotations omitted) (emphasis in original). In this case, it is not, and therefore, Spring and Galvin are entitled to qualified immunity upon this aspect of Hollant's claims.

Hollant next contends that it is clearly established that he was entitled to a hearing before being suspended without pay, since his contract provided that he could only be suspended with pay pending an investigation, and that Defendants Spring and Juriga violated his property interest in continued employment. Conspicuously absent from the Defendants' reply (ECF No. 34) is any argument with respect to whether Hollant's right to a pre-suspension

hearing is clearly established. The interest in continued employment constitutes a property interest for due process purposes "if there existed rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1976)) (internal quotations omitted). Hollant alleges that under the Collective Bargaining Agreement, an employee relieved of duty pending an investigation must remain on with-pay status, and he was suspended without pay by Defendant Juriga at Defendant Spring's direction from July 22, 2016 to August 22, 2016. (*See* Am. Compl., ECF No. 1 at ¶¶ 100.b., 104.a.-b.) Thus, upon the facts alleged, Hollant was entitled to some process prior to being suspended without pay, which he allegedly did not receive. Accordingly, Defendants Spring and Juriga are not entitled to qualified immunity at this juncture regarding this aspect of Hollant's claims. *See Andreu*, 919 F.2d 637 at 639 ("[I]f substantial factual development is necessary before the court can identify the set of facts implicating a clearly established right that the defendant has allegedly violated, the district court should defer ruling on the qualified immunity issue.") (internal quotations omitted).

### D. Count 5 fails to state a claim under the Florida Whistleblower Act

The Defendants argue that Hollant's Whistleblower Act (the "Act") retaliation claim in Count 5 should be dismissed for failure to allege the existence of a protected disclosure to an appropriate local official, and that he may not be protected by the statute because he was the subject of the investigation. "Under Florida's P[ublic] W[histleblowers] A[ct], which prohibits retaliation against whistleblowers in public employment, a municipal government entity may not take an adverse personnel action against an employee in retaliation for the employee's disclosure of the municipal entity's misconduct." *Wagner v. Lee Cty.*, 678 F. App'x 913, 921 (11th Cir. 2017) (citing Fla. Stat. § 112.3187). The information disclosed "must be disclosed to a chief executive officer . . . or other appropriate local official." Fla. Stat. § 112.3187(6). The persons protected by the Act include employees "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity." Fla. Stat. § 112.3187(7).

Hollant alleges that he participated in investigations and other inquiries pursuant to section 112.3187(7), and he disclosed information to the SAO, the Florida Department of Law Enforcement ("FDLE"), and the Miami-Dade Commission on Ethics and Public Trust ("Ethics Commission"). (Am. Compl., ECF No. 30 at ¶¶ 153-154.) Specifically, Hollant disclosed his beliefs that blame for the shooting was being shifted to him, that the local investigation was being led by someone with a conflict of interest, and that the investigation

into the shooting may not be objective, demonstrated by the failure to observe standard operating procedure in the investigation. (*Id.* at ¶¶ 155-156.) However, based on these allegations, Hollant is not an individual protected by the Act, because he was not "requested to participate" in the investigation of the shooting or by any of the agencies he names specifically—as alleged by Hollant, he was a subject of the investigations, whether properly or improperly. Accordingly, Hollant fails to state a claim under the Act.

### E. Count 6 fails to state a claim for national origin discrimination

The Defendants seek dismissal of Count 6, in which the Plaintiff asserts a claim for national origin discrimination[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* ("Title VII"), arguing that he has failed to allege facts to support that he suffered an adverse employment action, and he does not identify a similarly-situated comparator.

Title VII prohibits employers from engaging in practices that discriminate on the basis of national origin. 42 U.S.C. § 2000e-2(a)(1). Although "[a] complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss[,] complaints alleging discrimination still must meet the 'plausibility standard" of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (internal citation omitted). A plaintiff may meet this standard by alleging facts showing that similarly-situated employees outside of the protected class were treated more favorably with respect to an employment decision. *Cf. id.* (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir.2003)). "In order to make a valid comparison, the plaintiff must show that he and the comparators are similarly situated in all relevant respects." *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 965 (11th Cir. 2012). "The comparator must be nearly identical to the plaintiff in order to prevent courts from second-guessing an employer's reasonable decisions." *Id.*

Hollant alleges that he was suspended and ultimately terminated for complaining about white and Hispanic officers lacking objectivity in the course of an investigation of an incident involving a black citizen. In addition, Hollant alleges that Officer Aledda is a similarly situated individual who received different treatment. According to Hollant, even though Aledda was the shooter, and was ultimately charged criminally for his role in the incident involving Rios-Soto and Kinsey, he nevertheless was placed on administrative leave with pay—despite the City's ability under the Collective Bargaining Agreement to

---

[1] Although the Plaintiff's charge of discrimination (ECF No. 32-2) lists race discrimination as well, he seems to have abandoned that claim in the instant action.

suspend Aledda without pay. However, as alleged, Officer Aledda is not a similarly-situated comparator, first and foremost because Hollant alleges that his own initial suspension without pay was wrongful under the terms of his employment. So, while Hollant may have suffered an adverse employment action, he fails to identify a sufficient comparator. Moreover, to the extent that Hollant maintains that his termination was an adverse employment action, any Title VII claim asserted on that basis is not timely, as he has not exhausted his administrative remedies with respect to that claim.[2] *See Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1279 (11th Cir. 2004) ("[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") (internal quotations and citation omitted). As a result, Hollant fails to state a claim for national origin discrimination under Title VII.

### F. Count 7 fails to state a claim for intentional infliction of emotional distress

In Count 7, Hollant asserts a claim for intentional infliction of emotional distress ("IIED") against Defendants Spring, Juriga, Galvin and Roman, which the Defendants seek to dismiss, arguing that his allegations fail to sufficiently allege outrageous conduct, that he alleges that their acts were negligent and therefore cannot be intentional, and, in any event, that they are entitled to qualified immunity since the alleged acts occurred in the course of their official capacities.

To state a claim for IIED in under Florida law, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't,* 415 F. App'x 116, 122 (11th Cir. 2010) (quoting *Hart v. United States,* 894 F.2d 1539, 1548 (11th Cir. 1990)). Notably, the cause of action for IIED is "sparingly recognized by the Florida courts." *Vamper v. United Parcel Serv., Inc.,* 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998) (King, J.). A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently "outrageous." A brief survey of cases addressing claims of IIED underscores this point. *See, e.g., Rubio v. Lopez,* 445 F. App'x 170, 175 (11th

---

[2] The Court may consider the Plaintiff's EEOC charge (ECF 32-2) in ruling on the motion to dismiss because it is central to Hollant's claim and undisputed. *See M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1352 (S.D. Fla. 2016) (Altonaga, J.) ("In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint, exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to the plaintiff's claim and undisputed.").

Cir. 2011) (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); *Vamper*, 14 F. Supp. at 1306-07 (finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle).

Upon review, the Defendants' alleged conduct fails to rise to the level of outrageousness required. Even construing the facts in the light most favorable to the Plaintiff, the Defendants' alleged conduct is not such that it "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *See Rubio*, 445 F. App'x at 175.

### G. Galvin is entitled to immunity for his statements (Count 8)

In Count 8 of the amended complaint, Hollant asserts a claim against Galvin for slander. The Defendants argue that the claim should be dismissed because Galvin is entitled to absolute immunity for statements made in the scope of his duties as a City councilman.

Under Florida law, public officials who make statements within their duties are absolutely immune from suit for defamation. *City of Miami v. Wardlow*, 403 So. 2d 414, 415-16 (Fla. 1981). This privilege applies no matter how "'false or malicious or badly motivated' the accusation[s] may be . . . ." *McNayr v. Kelly*, 184 So. 2d 428, 430 (Fla. 1966); *see also Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997) (extending this doctrine to executive branch public officials). The controlling factor for the privilege is whether the statement was made within the scope of the official's duties. *Wardlow*, 403 So. 2d at 415-16. The question of whether allegedly defamatory statements are privileged is one for law to be decided by the court. *Resha v. Tucker*, 670 So. 2d 56, 59 (Fla. 1996). This grant of immunity is based on the premise that it is "in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *McNayr*, 184 So. 2d at 432 n.12. The Defendants contend that Galvin is entitled to immunity for his statements, which are absolutely privileged. The Court agrees.

In the amended complaint, Hollant alleges that Galvin accused him of "betraying the badge," and "jeopardizing the lives" of his fellow officers at an internationally broadcast press conference, and that Galvin stated in an email sent in his personal capacity that "[e]arlier today, the City of North Miami announced they are terminating the employment of Commander Emile Hollant who was present at last summer's shooting of unarmed caretaker Charles

Kinsey." (Am. Compl., ECF No. 30 ¶¶ 40, 63.)[3] The Plaintiff relies on *Albritton v. Gandy*, 531 So. 2d 381 (Fla. 1st DCA 1988), in arguing that Galvin is not entitled to immunity. However, in *Albritton*, the Court determined that the commissioner's statements, which induced the plaintiff to be discharged, were not made in the course of his duties principally because he was not in charge of hiring and firing. *Albritton*, 531 So. 2d at 387. Here, Hollant has not alleged that the statements made by Galvin resulted in his discharge, and although the parties agree that Galvin is not empowered to make employment decisions, there are no allegations that commenting on such decisions is outside of the scope of Galvin's duties as a City councilman. Accordingly, Galvin's alleged statements are privileged. *See Rico v. School Bd. of Miami-Dade Cty. Public Schs.*, No. 09-22281-CIV, 2009 WL 3273247, at *1 (S.D. Fla. Sept. 18, 2009) (Ungaro, J.) (member and vice-chair of the school board entitled to absolute immunity for statements at school board meetings, to the media, and to the Florida Bar, that the plaintiff was dishonest, guilty of wrongdoing, a thief, and could not be trusted); *see also Danford v. City of Rockledge*, 387 So. 2d 967, 968 (Fla. 5th DCA 1980) ("In Florida, executive officials have an absolute privilege for actions taken within the scope of their offices. Our Florida Supreme Court had adopted a broad definition of the phrase 'scope of office.'") (internal citation omitted).

### 4. Conclusion

For the reasons set forth, the Defendants' motion to dismiss (**ECF No. 32**) is **granted in part and denied in part**. Count 1 is dismissed with prejudice as to the Defendants Spring and Juriga, to the extent that the claim is asserted against them in their official capacities. To the extent that Count 1 is asserted against the Defendants Spring and Juriga in their personal capacities, they are not entitled to qualified immunity, and the motion to dismiss is denied. The motion is denied with respect to Count 1 as asserted against the City, and Count 2. The motion is granted with respect to Counts 3-8, and those counts are dismissed with prejudice.

---

[3] These are the only statements the Plaintiff alleges to have been defamatory in the amended complaint. In his response to the Defendants' motion to dismiss, the Plaintiff includes another alleged statement that he maintains Galvin published on his personal website – "He Lied to Me, the Commander Completely Lied to Me." (Resp., ECF No. 33 at 17.) However, the Plaintiff may not amend his complaint through a response to a motion to dismiss. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)).

**Done and ordered** at Miami, Florida on July 17, 2018.

_____
Robert N. Scola, Jr.
United States District Judge